JOHN C. WOLCOTT vs. GRAHAM A. ROOT.

An officer who, after selling on an execution sufficient property to satisfy it, proceeds to
sell other property of the judgment debtor, does not thereby become liable as a tres-
passer *ab initio* to one who held an unrecorded mortgage of a portion of the property
which was rightfully sold.

In an action against an officer for refusing to serve a writ and make an attachment thereon
of property which was pointed out to him, and which was then held by him on another
precept, and afterwards sold for more than sufficient to satisfy the same, the defendant
cannot be allowed to prove as a bar to the action a settlement made after the action was
commenced, and not set forth in the answer, by which the surplus left in his hands was
paid over to other creditors of the debtor, with the plaintiff's consent.

TORT against the sheriff of Berkshire county for the misfeas-
ance of John W. Howland, his deputy.   The first count alleged
that Howland, by virtue of some process committed to him as
an officer, seized four cows of the plaintiff and converted them
to his own use.   The second count alleged that Howland refused
to serve a writ in favor of the plaintiff against Calvin Mason,
though his fees were tendered, and property to be attached was
pointed out.   The answer denied the title of the plaintiff to the
cows mentioned in the first count; and denied the various alle-
gations in the second count, and averred that, if true, the prop-
erty pointed out had already been seized by Howland on other
precepts, which it was no more than sufficient to satisfy.

At the trial in the superior court, before *Rockwell*, J., it ap-
peared that the plaintiff held a mortgage of the cows from Cal-
vin Mason, dated June 9, 1856, and recorded March 8, 1858;
and in February 1858 an execution against Mason was deliv-
ered to Howland for service, on which he seized the cows in
question, as well as other property, and on the 6th of March
1858 he sold the cows and other property for twelve or fifteen
dollars more than enough to satisfy the same, and still proceeded
to sell a mow of hay for about $28, so that after satisfying the
execution he had left in his hands a surplus of $41.70.   The
plaintiff contended that, by selling the hay under the circum-
stances stated, Howland became a trespasser *ab initio*, and was

therefore liable to him for the value of the cows; but the judge ruled otherwise.

The defendant was allowed to introduce evidence, under objection, of a settlement made in April 1858, by which Howland paid over to other creditors of Mason the surplus in his hands, with the plaintiff's consent; for the purpose of showing that " when the writ mentioned in the second count was offered to Howland, March 17th 1858, he had not in his hands the said $41.70."

The jury returned a verdict for the defendant, and the plaintiff alleged exceptions.

*J. C. Wolcott & M. Wilcox,* for the plaintiff.

*H. L. Dawes & J. N. Dunham,* for the defendant.

BIGELOW, C. J.    This is a novel attempt to extend the doctrine of trespass *ab initio,* which in our opinion is not sustained on principle or by authority.    The officer was guilty of no wrongful or illegal act towards the plaintiff or his property, and committed no excess or violation of his authority in any matter which in the least degree trenched on the legal rights of the plaintiff.    The property conveyed in mortgage to him was liable to seizure on execution against the mortgagor, because the mortgage had not been recorded according to law, and the officer in taking and selling it took no step which was not fully authorized in the due service of his process, so far as any right or title of the plaintiff in the property was thereby affected. Towards the plaintiff therefore he was not in any sense a trespasser. He did no act in relation to him or his rights in the property which the law can regard as an excess or abuse of authority.    There is therefore no basis on which to rest the legal fiction by which an original wrongful intent in relation to the property of the plaintiff can be inferred from any subsequent act of the officer, and by reason of which the plaintiff can fix on him the responsibility of a trespasser *ab initio.*    The adjudged cases go no farther than to hold that where a license or authority is given to any one by law, and he exceeds or abuses it, he can be held liable as a trespasser *ab initio* to him whose rights or property are in any way injured or affected by such abuse or

excess.   But no case can be found where a person against whose property and rights no excess or abuse has been committed can rely on a wrong or injury done to another, as evidence of an original unlawful intent towards him, and thus convert an officer exercising a lawful authority into a trespasser *ab initio.*   Taking it for granted, without deciding the point, that in selling the hay, under the circumstances proved at the trial, the officer was guilty of such excess or abuse of his process as to make him a trespasser towards the judgment debtor, he did not thereby do any act which in any degree infringed on the rights of the plaintiff, or which tended to make him answerable to him in this action.

The evidence of the settlement with the plaintiff in April 1858 seems to have been admitted under some misapprehension as to dates.   Inasmuch as it was made after the commencement of the action, it was under the answer competent only in mitigation of damages, and not in bar of the cause of action set out in the second count of the declaration.   As the evidence was admitted generally, and may have had an effect on the minds of the jurors in finding their verdict, its admission furnishes a sufficient reason for granting a new trial on that count.                                   *Verdict on second count set aside.*